**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

———————————————————— :     Civil Action No. 15-6468(FLW)
                              :
NEW JERSEY DEPARTMENT OF    :
ENVIRONMENTAL PROTECTION, et al., :       **OPINION**
                              :
             Plaintiffs,    :
                              :
    v.                         :
                              :
AMERADA HESS CORPORATION, et al., :
                              :
             Defendants.    :
———————————————————— :

**WOLFSON, United States District Judge**:

     This matter comes before the Court on the cross-motions of Plaintiffs New Jersey Department of Environmental Protection ("NJDEP"), the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund (collectively "Plaintiffs") and Defendants Exxon Mobil Corporation and ExxonMobil Oil Corporation, ExxonMobil Oil Corporation, Exxon Mobil Corporation, Getty Petroleum Marketing Inc., Getty Properties Corp., Gulf Oil Limited Partnership and Cumberland Farms, Inc. (collectively, "Defendants"), to declare the extent of Plaintiffs' Seventh Amendment right to trial by jury for claims raised in Plaintiffs' Fourth Amended Complaint for past and future primary and compensatory restoration damages under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 *et seq.* (the "Spill Act"), the Water Pollution Control Act, N.J.S.A. 58:10A-1 to 35 ("WPCA"), and the common law of the State of New Jersey; as well as to establish

a bifurcated trial structure separating Plaintiffs' legal and equitable claims, pursuant to Fed. R. Civ. P. 42.

For the reasons set forth below, the Court finds that Plaintiffs are entitled, under the Seventh Amendment, to a jury trial on their statutory and common law claims (i) for primary restoration damages for estimated future costs not yet incurred, (ii) for compensatory restoration damages, and (iii) for all other miscellaneous legal relief sought in connection with Plaintiffs' common law claims, including punitive damages. Plaintiffs are not entitled to a jury trial on their claims (i) for primary restoration damages to recover past costs already incurred, and (ii) for all other miscellaneous equitable relief, including injunctive relief. Accordingly, the Court will bifurcate the proceedings in this matter into (1) an initial jury trial of Plaintiffs' statutory and common law claims for primary restoration damages based on estimates of future costs, compensatory restoration damages, and other legal relief including punitive damages; and (2) a subsequent bench trial on Plaintiffs' Spill Act primary restoration damages claim for past costs incurred and other equitable relief, including any injunctive relief.[1]

## I. FACTUAL BACKRGOUND & PROCEDURAL HISTORY

The factual background of this matter is set forth in detail in *New Jersey Dep't of Envtl. Prot. v. Amerada Hess Corp.*, 323 F.R.D. 213 (D.N.J. 2017) (the "Restoration Opinion"). As relevant to the present motion, Plaintiffs seek to recover against

---

[1] To the extent that Defendants intended to argue in briefing the present cross motions that proceedings should be further divided to separate Plaintiffs' product liability claim from the other jury claims in the Fourth Amended Complaint in order to avoid prejudicing those Defendants that did not manufacture or refine the product at issue, this question has not been adequately briefed and would properly be the subject of a separate motion *in limine*.

Defendants for injuries to the groundwater of the State of New Jersey alleged to have been caused by the discharge of Methyl Tertiary Butyl Ether ("MTBE"), on and around properties owned and/or controlled by Defendants (the "Trial Sites"). In their Fourth Amended Complaint, Plaintiffs raise three common law causes of action — product liability, public nuisance, and negligence[2] — and two statutory causes of action — under the Spill Act and the WPCA. Although Plaintiffs bring their claims under a number of different legal theories, all share substantially the same prayer for relief. Plaintiffs seek a declaratory judgment[3] of Defendants' joint and several liability for and seek to recover (i) primary restoration damages for all past and future costs incurred or to be incurred to investigate, clean up, remove, restore, treat, monitor, and otherwise respond to the discharge of MTBE into the waters of the State of New Jersey, such that the waters are restored to their original, pre-discharge condition ("primary restoration")[4], *see, e.g.,*

[2] In pretrial proceedings, the MDL Court dismissed Plaintiffs' claim for common law trespass and limited Plaintiffs' common law public nuisance claim to recovery for abatement.

[3] Plaintiffs seek a declaratory judgment of Defendants' joint and several liability for primary and compensatory restoration damages. FAC, Prayer for Relief, p. 29, ¶ a. Declaratory judgment is a *sui generis* remedy and "may be granted upon either legal or equitable claims." *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 223 (3d Cir. 2009). To determine the nature of the relief sought in a declaratory judgment action, courts determine "in what kind of suit the claim would have come to court if there were no declaratory judgment remedy." *Id.* (citing 9 C. Wright & A. Miller, Federal Practice and Procedure § 2313 (1971)). "If the declaratory judgment action does not fit into one of the existing equitable patterns but is essentially an inverted law suit—an action brought by one who would have been a defendant at common law—then the parties have a right to a jury. But if the action is the counterpart of a suit in equity, there is no such right." *Id.* at 223. The Court therefore, does not separately address Plaintiffs' claim for a declaratory judgment, and, indeed, the parties do not brief it separately, instead finding that it seeks equitable or legal relief to the extent the underlying claim for either primary or compensatory restoration damages seeks equitable or legal relief.

[4] In other words, as the Court noted in its prior Opinion, and as the state courts of New Jersey have defined the term, Plaintiffs seek "primary restoration" damages for the

3

Fourth Amended Complaint ("FAC"), Prayer for Relief, p. 29-30, ¶¶ a, b, c, d, ; (ii) compensatory restoration damages for the lost interim value, benefits, and services of the State's water resources during the period of their injury and contamination by MTBE ("compensatory restoration")[5], *id.* at ¶¶ a, e; (iii) all appropriate injunctive relief to abate or mitigate MTBE contamination of the State's waters, *id.* at, p. 30, ¶ g; (iv) all other appropriate legal relief, including punitive damages, *id.* at p. 30,  ¶¶ f, h, i; and (v) attorneys' fees and costs, *id.* at ¶ j. The Fourth Amended Complaint contains a jury demand on all claims.

At a hearing held on November 16, 2017, the parties represented that there was a dispute concerning Plaintiffs' entitlement to trial by jury for their Spill Act claims. The Court set a briefing schedule, and, on January 22, 2018, the parties filed cross motions addressing Plaintiffs' entitlement to trial by jury and the permissible ordering of bench and jury proceedings under the Seventh Amendment. Although initially represented as concerning the Spill Act, the parties' motion briefing addresses Plaintiffs' entitlement to trial by jury for all of Plaintiffs' statutory and common law claims based upon the character of the relief sought in each claim. In their motion, Plaintiffs argue that the Seventh Amendment entitles them to a jury trial on all claims in their Fourth Amended Complaint, including claims under the Spill Act, which seek either compensatory or primary restoration damages. Plaintiffs further contend that the Seventh Amendment

---

reduction of pollutants in the environment at the Trial Sites "to pre-discharge conditions." *Exxon Mobil*, 393 N.J. Super. at 406.

[5] In other words, as the Court noted in its prior Opinion, and as the state courts of New Jersey have defined the term, Plaintiffs seek "compensatory restoration" damages for "replacement of the ecological services and values lost through compensation." *Exxon Mobil*, 393 N.J. Super. At 406, 923 A.2d at 356.

mandates that these legal claims be tried to a jury before any remaining equitable claims are tried to the bench. In their cross motion, Defendants substantially concede[6] that Plaintiffs are entitled to a jury trial on their claims for compensatory restoration damages, but argue, based upon the Third Circuit's decision in *Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400 (3d Cir. 1995), that primary restoration damages under the Spill Act, and, by implication, such damages under all of Plaintiffs' legal theories, constitute equitable relief for which the Seventh Amendment provides no jury trial right. Defendants further contend that Plaintiffs' claims for primary restoration damages constitute roughly 99.4% of Plaintiffs' total potential recovery in the Fourth Amended Complaint, such that trying them first would advance the interests of judicial efficiency. Defendants therefore request that the Court exercise its discretion under Fed. R. Civ. P. 42 to bifurcate the trial into an initial bench trial on Plaintiffs' Spill Act claim for primary restoration damages, and a subsequent jury trial on all remaining claims for legal relief.

## II. STANDARD OF REVIEW

In considering the present cross motions, the Court is called upon to resolve Plaintiffs' entitlement to trial by jury on their claims for monetary damages and to determine how, if at all, any trial in this matter should be bifurcated to ensure the efficient resolution of Plaintiffs' claims, while preserving Plaintiff's right to trial by jury under the Seventh Amendment. "When a jury trial has been demanded . . . [t]he trial on all issues

---

[6] Rather than argue the merits of Plaintiffs' compensatory restoration claims under the Seventh Amendment, Defendants take the unusual step of making a vague offer in briefing to settle such claims in order to "moot" Plaintiffs' constitutional concerns. ECF No. 100-1, p. 5. The Court finds, however, that Plaintiffs have not accepted Defendants' pseudo-settlement offer and that Plaintiffs cannot be compelled to accept Defendants' offer, especially considering that Defendants have not offered any admission of liability for such damages. *Id.* at p. 5 n. 5.

so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). "The right to a jury trial in federal court, regardless of whether the claim arises under state law, presents a question of federal law." *In re City of Philadelphia Litigation*, 158 F.3d 723, 726 (3d Cir. 1998) (citing *Simler v. Conner,* 372 U.S. 221, 222 (1963) (per curiam)). This holds true "'even when a state statute or state constitution would preclude a jury trial in state court.'" *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 313 (3d Cir. 2007), *as amended* (Aug. 28, 2007) (quoting *Gipson v. KAS Snacktime Co.,* 83 F.3d 225, 230 (8th Cir. 1996) (citations omitted)). "This long-recognized precept is dictated by the clear command of the Seventh Amendment," *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 313 (3d Cir. 2007), *as amended* (Aug. 28, 2007), and plays a critical role in the present case, where past state practice suggests that Spill Act claims are tried to the court, not a jury, under state law. *See GEI Int'l Corp. v. St. Paul Fire & Marine Ins. Co.*, 287 N.J. Super. 385, 391–92, 671 A.2d 171, 174 (App. Div. 1996), *aff'd sub nom. In re Envtl. Ins. Declaratory Judgment Actions*, 149 N.J. 278, 693 A.2d 844 (1997) ("In New Jersey, as in other jurisdictions, the right to trial by jury remains inviolate, *N.J. Const.* art. I, ¶ 9, but inviolate only with respect to causes of action that were triable by jury at common law. . . . The Spill Act is a newly-created statutory right and the Legislature by its enactment did not codify nor could it have codified a common law right that did not pre-exist."); *W.R. Grace & Co. v. Weja, Inc.*, No. A-5527-03T1, 2006 WL 3435047, at *1 (N.J. Super. Ct. App. Div. Nov. 30, 2006) ("No jury trials are available for claims brought under [Spill Act]").

The Seventh Amendment to the United States Constitution provides that "in Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend. VII. "[T]he Seventh Amendment [ ] applies not only to common-law causes of action, but also to 'actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.' " *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 348, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (quoting *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)). *See also Doe v. Hesketh*, 828 F.3d 159, 169 (3d Cir. 2016) ("'The Seventh Amendment [applies] to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.'" (quoting *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974)). As set forth in more detail below, "[t]o determine whether a statutory cause of action is more analogous to actions decided in courts of law or equity 'we examine both the nature of the statutory action and the remedy sought.'" *Pichler*, 542 F.3d at 388 (quoting *Feltner*, 523 U.S. at 348).

Further, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). The decision whether and in what manner to bifurcate a trial is within the broad discretion of the trial judge and is to be decided on a case-by-case basis. *See Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98,

115 (3d Cir. 1992); *Idzojtic v. Pennsylvania R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972).

## III. ANALYSIS

The parties' cross motions concern Plaintiffs' claims for relief for compensatory and primary restoration damages. They have not challenged the presumptive characterization of the remaining categories of relief sought in the Fourth Amended Complaint as either legal (all other appropriate legal relief, including punitive damages[7]) or equitable (all appropriate injunctive relief to abate or mitigate MTBE contamination of the State's waters). The crux of their dispute, and indeed the supermajority of their argument in briefing, however, concerns the relief available under the Spill Act, as interpreted through analogous federal precedents. As the focus of the Seventh Amendment inquiry is first and foremost on the nature of the relief sought, rather than the particular form of the action, the Court will apply its findings under the Spill Act to all of Plaintiffs' claims seeking the same relief.[8]

The Spill Act provides, in relevant part, that the New Jersey Department of Environmental Protection "may commence a civil action . . . for . . . the cost of restoration and replacement, where practicable, of any natural resource damaged or

---

[7] "By definition—and unlike compensatory damages—punitive damages are left to the discretion of the jury and need not be defined on a tort-by-tort basis." *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 358–59 (3d Cir. 2015).

[8] The parties do not extensively brief this threshold issue. Plaintiffs merely observe the absence of specific authority and cite to a state law precedent in which certain restoration-type damages were found to be legal relief in action at common law. ECF No. 99-1, p. 21 (citing *Berg v. Reaction Motors Div, Thiokol Chem. Corp.*, 37 N.J. 396, 181 A.2d 487 (1962)). In the absence of specific, binding, federal authority, however, the Court looks to the general Supreme Court precedents cited above and throughout, in which the character of the relief sought rather than the characterization of the action as statutory or common law is dispositive of the Seventh Amendment analysis.

destroyed by a discharge. . . ." N.J.S.A 58:10-23.11u.b(4). Parties responsible for the

discharge of pollutants covered by the Act are strictly liable for all "cleanup and removal

costs" associated with the discharge. N.J.S.A. 58:10-233.11g(c)(1). "Cleanup and

removal costs" are defined as direct and indirect costs incurred in the "removal or

attempted removal of hazardous substances," or "taking of reasonable measures to

prevent or mitigate damage to the public health, safety, or welfare." N.J.S.A. 58:10-

23.11b.  These costs include the costs of both primary and compensatory restoration.

Primary restoration concerns the reduction of pollutants in the environment "to pre-

discharge conditions." *N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp.,* 393 N.J. Super.

388, 406 *(*App. Div. 2007).  Compensatory restoration concerns "replacement of the

ecological services and values lost through compensation." *Id.* The State courts of New

Jersey have interpreted compensatory restoration to include "loss of use damages." *Id.* at

410. In addition to pursuing several common law causes of action, Plaintiffs in this case

seeks an award of both primary and compensatory restoration damages under the Spill

Act, and claim an entitlement to trial by jury under the Seventh Amendment for both

categories of relief.[9] In briefing the present cross motions, Plaintiffs clarify that

---

[9] In briefing, Plaintiffs, without support, contend that Defendants have not challenged the availability of a jury trial on primary restoration damages under the WPCA. Defendants, in similarly conclusory fashion, assert that they do challenge the WPCA claim and contend that the WPCA should be analyzed in conformance with the Spill Act claim. Both parties rely exclusively on precedents in the context of the Spill Act and its federal analog, CERCLA, and do not discuss the WPCA. Reviewing the relief available under that statute, which closely tracks the Spill Act, however, the Court concludes that Plaintiffs' claims under the WPCA are subject to the same analysis under the Seventh Amendment as Plaintiffs' Spill Act claims. *See* N.J.S.A. § 58:10A-10(2)-(4) (relief under the statute includes, *inter alia*, "reasonable costs of any investigation, inspection, or monitoring survey which led to the establishment of the violation, and for the reasonable costs of preparing and litigating the case under this subsection," "reasonable cost incurred by the State in removing, correcting or terminating the adverse effects upon water quality

Plaintiffs' demand for Spill Act primary restoration damages includes both the recovery of past costs and damages for future costs not yet incurred. ECF No. 99-1, p. 19. This is consistent with Plaintiffs' prayer for relief in the Fourth Amended Complaint. *See, e.g.*, FAC, p. 29. This Court's task on the present cross motions is to declare Plaintiffs' right to a jury trial under the Seventh Amendment for each category of relief sought.

**A. Primary Restoration Damages**

As a threshold matter, "[t]he Supreme Court has instructed that '[b]efore inquiring into the applicability of the Seventh Amendment, [courts] must first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Pichler v. UNITE*, 542 F.3d 380, 387 (3d Cir. 2008) (quoting *City of Monterey v. Del Monte Dunes,* 526 U.S. 687, 707 (1999) (internal quotation omitted)). Here, it is clear, and the parties do not contest, that the Spill Act does not on its face provide for a right to trial by jury. *See GEI Int'l Corp. v. St. Paul Fire & Marine Ins. Co.*, 287 N.J. Super. 385, 391–92 (App. Div. 1996), *aff'd sub nom. In re Envtl. Ins. Declaratory Judgment Actions*, 149 N.J. 278 (1997); *W.R. Grace & Co. v. Weja, Inc.*, No. A-5527-03T1, 2006 WL 3435047, at *1 (N.J. Super. Ct. App. Div. Nov. 30, 2006). "Accordingly, we must engage in a Seventh Amendment analysis." *Pichler*, 542 F.3d at 387 (citing *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 393 (3d Cir. 1988)).

As noted above, the Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury

---

resulting from any unauthorized discharge of pollutants for which the action under this subsection may have been brought," and "compensatory damages for any loss or destruction of wildlife, fish or aquatic life, or other natural resources, and for any other actual damages caused by an unauthorized discharge.").

shall be preserved." U.S. Const. amend. VII. "The right to a jury trial includes more than the common-law forms of action recognized in 1791; the phrase 'Suits at common law' refers to 'suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.'" *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (U.S. 1990) (emphasis and alterations in original)(quoting *Parsons v. Bedford,* 3 Pet. 433, 447 (1830)).

"To determine whether a particular action will resolve legal rights, [courts] examine both the nature of the issues involved and the remedy sought." *Chauffeurs*, 494 U.S. at 565. "First, [courts] compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, [courts] examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States,* 481 U.S. 412, 417-418 (1987)(citations omitted). "The second inquiry is the more important in our analysis." *Chauffeurs*, 494 U.S. at 565 (citing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42 (1989)).

"The right to a jury trial in federal court, regardless of whether the claim arises under state law, presents a question of federal law." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 313 (3d Cir. 2007), *as amended* (Aug. 28, 2007) (citations omitted). Specifically, "the substantive dimension of the claim asserted finds its source in state law, but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law." *Simler*,

372 U.S. at 222. The State's characterization of the claim as legal or equitable is "irrelevant." *Amoco Oil Co. v. Torcomian*, 722 F.2d 1099, 1103 (3d Cir. 1983).[10]

"Generally, an action for money damages was 'the traditional form of relief offered in the courts of law.'" *Chauffeurs*, 494 US at 570 (quoting *Curtis v. Loether,* 415 U.S. 189, 196 (1974)). *See also Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255 ("[m]oney damages are, of course, the classic form of *legal* relief."). "Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has

---

[10] Despite citing the *Amoco* decision favorably in briefing, ECF 99-1, p. 22 n. 8 (citing *Amoco* and arguing "[n]otwithstanding state court precedents evaluating whether a claim should be tried to a jury under New Jersey's Constitution are 'irrelevant' to this Court's Seventh Amendment analysis"), Plaintiffs nevertheless devote substantial argument to the notion that New Jersey State judicial authorities would consider primary restoration damages to be legal relief. *See* ECF 99-1, p. 18-21 (citing *Exxon Mobil*, 393 N.J. Super. at 400) (Spill Act "has been viewed as a codification of the common law cause of action in nuisance under which the State has the right to obtain damages for an injury to public resources or the environment"), *Berg v. Reaction Motors Div., Thiokol Chem. Corp.*, 37 N.J. 396 (1962) (finding plaintiff in common law tort action had "right to recover the reasonable cost of necessary repairs")); ECF 101, p. 25-26 (discussing the import of Plaintiff's past litigation practices before the New Jersey State Courts and the November 2017 New Jersey constitutional amendment requiring all NRD recoveries to be placed in a segregated account to be used only to repair, restore, replace, or preserve the state's natural resources). The Court agrees with Defendants that these authorities are irrelevant to the Seventh Amendment inquiry.

Defendants similarly devote substantial attention in briefing to state authorities, which Defendants contend show that the New Jersey state courts and, indeed, NJDEP itself, have historically viewed primary restoration damages as an equitable, restitutionary remedy. *See* ECF 100-1, p. 8-15 (discussing prior bench trials in Spill Act primary restoration damages cases before the New Jersey state courts, including cases in which NJDEP filed for relief in Chancery Court, as well as NJDEP ONRR policy statements characterizing primary restoration damages as restitutionary relief). Again, as governing law clearly establishes that the characterization of a remedy as legal or equitable in federal court is a pure question of federal law, to which state authorities are irrelevant, the Court will not rely upon the state authorities identified by Defendant in reaching its decision on Plaintiff's entitlements under the Seventh Amendment. *Simler*, 372 U.S. at 222 ("the characterization of . . . state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law.").

traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Bowen v. Massachusetts,* 487 U.S. 879, 918–919 (1988) (SCALIA, J., dissenting)).

The Supreme Court however, has not held that "any award of monetary relief must *necessarily* be 'legal' relief." *Chauffeurs*, 494 U.S. at 570 (emphasis in original). Instead, the Supreme Court has identified two "exceptions to the general rule" in which courts may "characterize damages as equitable." First, money damages are equitable "where they are restitutionary, such as in 'action[s] for disgorgement of improper profits,'" *Chauffeurs*, 494 US at 570 (quoting *Tull,* 481 U.S. at 424). *See also id.* at 570-71(relief is restitutionary where plaintiff seeks "money wrongfully held by the [defendant], not money that plaintiff "would have received" if not for defendant's improper conduct"). "Second, a monetary award 'incidental to or intertwined with injunctive relief' may be equitable." *Id.* at 571 (quoting *Tull,* 481 U.S. at 424). In the present cross motions, Defendants concede that Plaintiffs' claims for primary restoration damages seek a monetary award, but argue, in the alternative, that both exceptions apply to vitiate Plaintiffs' right to trial by jury.

### 1. Primary Restoration as Restitution

Looking to the first *Chauffeurs* exception, the Court considers whether, as a matter of federal law, Plaintiffs' Spill Act claim seeking a monetary award of primary restoration damages is a claim for equitable relief for which no right to trial by jury attaches under the Seventh Amendment. As noted above, the Court's inquiry is governed by federal law. There are no federal precedents discussing the right to a trial by jury in

the Spill Act context, and so the Court must look to analogous circumstances and general federal law to resolve the present motions. It is well-established, and the parties agree that, in interpreting the Spill Act, Courts may look to precedents formed in the context of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the Spill Act's federal analog. *See Morton Int'l, Inc. v. A.E. Staley Mfg. Co.,* 343 F.3d 669, 685 (3d Cir. 2003) ("Because the Spill Act is the 'New Jersey analog to CERCLA,' the standards for liability are the same."); *N.J. Tpk. Auth. v. PPG Indus., Inc.,* 197 F.3d 96, 105 (3d Cir. 1999) ("The Spill Act is the New Jersey environmental protection act that resembles CERCLA in its purpose, although it sets forth a distinct strict liability scheme."); *GATX Terminals Corp. v. New Jersey Dep't of Envtl. Prot.,* 86 N.J. 46, 53–54, 429 A.2d 355, 359 (1981) ("In such a situation, a court may look to the analogous federal statute and regulations thereunder for guidance.").

CERCLA provides that the Government may bring suit against the dischargers of pollutants for, *inter alia*, the costs associated with the clean-up and mitigation of the discharge and for damages to natural resources resulting from the discharge. *E.I. DuPont de Nemours & Co. v. United States*, 508 F.3d 126, 129 (3d Cir. 2007). Specifically, CERCLA Section 107(a)(4)(A)-(D) provides that responsible parties under the Act "shall be liable for":

> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
> (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
> (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607(a)(4)(A)-(D). The federal courts differentiate between claims under § 9607(a)(4)(A) and (B), referred to as actions for cleanup or "response costs," and claims under § 9607(a)(4)(C), referred to as claims for natural resource damages. *See Cont'l Ins. Companies v. Ne. Pharm. & Chem. Co.*, 842 F.2d 977, 986 (8th Cir. 1988).[11]

In *Hatco*, the Third Circuit held that actions to recover response costs under CERCLA § 9607 seek equitable, restitutionary relief and therefore do not trigger the plaintiff's right to trial by jury under the Seventh Amendment. Specifically, in *Hatco*, "the buyer of a chemical plant . . . sued the seller under state law and the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42

---

[11] One court succinctly defined the difference as follows:

> Rehabilitation or restoration of natural resources and the reasonable costs incurred in assessing the restoration seem to fall squarely within the response costs category of 107(a)(4)(A) [42 U.S.C. sec. 9607(a)(4)(A) ], whereas claims for the value of the resources that are forever lost, (calculated by taking the value of the resources as they were before the pollution and subtracting the value of the resources after restoration is complete); the lost use of such resources over time; and the costs of assessing how much is lost forever or how much lost use over time there has been, fall under "natural resource damages". 107(a)(4)(C) [42 U.S.C. sec. 9607(a)(4)(C) ].

*In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 994, 999 (D. Mass. 1989). The parties, however, dispute whether the *Acushnet* Court erred in excluding restoration costs from recoverable damages under subsection 9607(a)(4)(C), on the basis of 42 U.S.C § 9607(f)(1), which ambiguously suggests there may be some overlap between the categories of recovery. *See* 42 U.S.C § 9607(f)(1) ("Sums recovered by a State as trustee under this subsection shall be available for use only to restore, replace, or acquire the equivalent of such natural resources by the State. The measure of damages in any action under subparagraph (C) of subsection (a) of this section *shall not be limited by the sums which can be used to restore or replace such resources*. There shall be no double recovery under this chapter for natural resource damages, including the costs of damage assessment or restoration, rehabilitation, or acquisition for the same release and natural resource." (emphasis added)).I need not resolve this question of the relief available *under CERCLA* on the motions before it, however, because, as explained below, I find that CERCLA is not sufficiently analogous to the Spill Act in its treatment of future response costs to be instructive in this Court's interpretation of the Spill Act's damages provisions.

U.S.C. §§ 9601–9675, for costs incurred in abating contamination at the site." *Hatco*, 59 F.3d at 403. The district court denied the plaintiff's request for a jury trial "concluding that cost-recovery actions . . . under CERCLA, 42 U.S.C. §§ 9607(a)(4) . . . are equitable in nature." *Hatco*, 59 F.3d at 411 (citing *Hatco v. W.R. Grace & Co.—Conn.,* 859 F. Supp. 769, 774 (D.N.J.1994)). The district court reasoned that "cost-recovery suits are actions for restitution," which, as an equitable remedy, are not triable to a jury. *Id.* On appeal, the Third Circuit affirmed, concluding that "a jury trial is not available in a claim brought under section 9607." *Id.* at 412. The Circuit Court first observed that "[r]estitution is based on substantive liability having its origins in unjust enrichment or the restoration to a party in kind of his lost property or its proceeds." *Id.* The Third Circuit then explained that it was persuaded by two authorities. First, the court looked to the decision of the Eighth Circuit in *United States v. Northeastern Pharmaceutical & Chem. Co.* ("*NEPACCO*"), 810 F.2d 726 (8th Cir. 1987). In a subsequent, related opinion, *Cont'l Ins. Companies,* which further developed *NEPACCO*, the Eighth Circuit explained the significance of the "distinction between recovery of cleanup costs and recovery of damages" under CERCLA 9607(a)(A) and (C). The Eighth Circuit first noted that "[u]nder CERCLA cleanup costs are not substantially equivalent to compensatory damages for injury to or destruction of the environment." *Cont'l Ins. Companies*, 842 F.2d at 986. The court then explained that:

> The cost of cleaning up a hazardous waste site often exceeds its original value. On the other hand, some natural resources are of exceptional value and their destruction could greatly exceed the cost of cleaning up any hazardous waste contamination. A significant difference between the measurement of liability for cleanup costs and for damage to natural resources could determine whether the government sues for cleanup costs or for damages.

*Id.* at 986-87. The court went on to find that actions by governments seeking "recovery of cleanup costs under CERCLA § 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A) . . . are essentially equitable actions for monetary relief in the form of restitution or reimbursement of costs," while strongly suggesting that actions seeking recovery of "damages for injury to, destruction of, or loss of natural resources, pursuant to CERCLA § 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C)" are actions for legal relief. *Id.* at 987. *See also Maryland Cas. Co. v. Armco, Inc.*, 822 F.2d 1348, 1353 (4th Cir. 1987) ("Damages is a form of substitutional redress which seeks to replace the loss in value with a sum of money. Restitution, conversely, is designed to reimburse a party for restoring the status quo. It might very well cost far more to restore a contaminated marsh than it would to pay damages for its loss.").

Second, the Third Circuit in *Hatco* cited the Restatement of Restitution § 115. That section provides:

> A person who has performed the duty of another by supplying things or services, although acting without the other's knowledge or consent, is entitled to restitution from the other if
> - (a) he acted unofficiously and with intent to charge therefor, and
> - (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety.

Restatement (First) of Restitution § 115 (1937). The comments further explain that "[t]he abatement of a serious public nuisance . . . is . . . [a] situation calling for the application of the rule." Restatement (First) of Restitution § 115 cmt. a. (1937). Citing the foregoing, the Third Circuit applied the "general rule" that "the right to a jury trial is protected by the Seventh Amendment when the claim is a legal one, but not if it is equitable," to find that the *Hatco* plaintiff's claim under § 9607 for restitution, an equitable remedy, was not entitled to trial by jury. *Hatco*, 59 F.3d at 411-12.

Defendants contend that the relief sought in Plaintiffs' claims for primary restoration damages, measured in the cost of cleanup efforts to restore the State's groundwater to its predischarge condition, is the same as that sought in a CERCLA cost recovery action under § 9607(a)(4)(A), and, therefore, *Hatco* should apply to render such relief equitable and triable to the Court , not the jury. In response, Plaintiffs present two arguments why *Hatco* should not govern this Court's Seventh Amendment analysis. First, Plaintiffs argue that *Hatco* is distinguishable because the Third Circuit's ruling dealt only with the Government's attempt to recoup *past costs*, already incurred in cleaning up the discharge for which the defendants were alleged to be liable. Plaintiffs admit that a portion of the primary restoration damages they seek here consist of costs already incurred, ECF No. 99-1, p. 19 n. 6, but contend that the vast majority of the monetary award they seek comprises estimated future costs, which, Plaintiffs claim, are not restitutionary. Second Plaintiffs argue that *Hatco* has been overruled by implication by the Supreme Court's holding in *Knudson*, under which Plaintiffs contend their demand for primary restoration damages is now classified as legal relief, triggering jury trial rights under the Seventh Amendment.

Although the parties both embrace an all-or-nothing approach to the application of *Hatco* and *Knudson* to the Plaintiffs' claims for primary restoration damages under the Spill Act, the Court finds that the law enunciated therein applies differently to Plaintiffs' primary restoration claims for past and for estimated future costs. Turning first to the question of the applicability of *Hatco*, a CERCLA § 9607(a)(4)(A) case, to the Spill Act context, the Court finds it an imperfect, but still relevant analog. Plaintiffs are correct that cost recovery actions under CERCLA are limited to the recovery of past costs actually

18

incurred by the plaintiff. 42 U.S.C. § 9613(g)(2) (providing that an action may be commenced "for recovery of costs at any time *after such costs have been incurred* " (emphasis added)); *U.S. Virgin Islands Dep't of Planning & Nat. Res. v. St. Croix Renaissance Grp., L.L.L.P.*, 527 F. App'x 212, 214 (3d Cir. 2013) ("We agree that the first item cannot serve as the basis for an action under CERCLA because it was not incurred before a lawsuit was initiated."). The Spill Act, by contrast, has been interpreted by the New Jersey Courts not to be so limited. *Exxon Mobil*, 393 N.J. Super. at 399–400 ("DEP can require responsible polluters to pay for cleanup and removal costs prior to remedial action"); *Matter of Kimber Petroleum Corp.*, 110 N.J. 69, 74 (1988) ("DEP has the discretion, implicit in its broad implied powers, to require responsible polluters to pay for cleanup or removal costs prior to remedial action."). Under the Spill Act, therefore, unlike CERCLA, the State may seek an award of cleanup and removal costs, before actually incurring those costs. Accordingly, *Hatco*, as a reported decision of the Third Circuit resolving a question of law on what the parties acknowledge to be the most closely analogous federal statute, binds this Court only as to Plaintiffs' claims seeking to recover past primary restoration costs. CERCLA and the Spill Act are simply too dissimilar in their treatment of future primary restoration costs for this Court to draw any meaningful conclusions concerning future costs from the Third Circuit's decision. The Court therefore finds that, under *Hatco*, Plaintiffs' claims for primary restoration damages in the form of past cleanup and removal costs already incurred constitute equitable restitution, for which no trial by jury is guaranteed under the Seventh Amendment. For this category of damages, the Court must next consider whether *Hatco* remains the law after the Supreme Court's decision in *Knudson*.

In *Knudson*, the Supreme Court was called upon to determine whether § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 891, 29 U.S.C. § 1132(a)(3) (1994 ed.), which provides for certain equitable relief, authorized a restitutionary action to enforce a reimbursement provision of an ERISA plan. *Knudson*, 534 U.S. at 206. The Court first held that "not all relief falling under the rubric of restitution is available in equity." *Id.* at 212. The justices explained that

> In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity. Thus, "restitution is a legal remedy when ordered in a case at law and an equitable remedy ... when ordered in an equity case," and whether it is legal or equitable depends on "the basis for [the plaintiff's] claim" and the nature of the underlying remedies sought.

*Id.* at 212–13. The Supreme Court then provided the historical background of what it termed legal restitution:

> In cases in which the plaintiff could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution *at law* through an action derived from the common-law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money. Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).

*Id.* at 213 (quotations omitted). The Court distinguished this legal restitution from equitable restitution, observing:

> In contrast, a plaintiff could seek restitution *in equity,* ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. . . . A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a

> constructive trust of or an equitable lien upon other property of the [defendant]."
> Restatement of Restitution, *supra*, § 215, Comment *a*, at 867.

*Id.* at 213–14. Given this historical foundation, the Court enunciated a new understanding of the theory of restitution, that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214. In so doing, the Supreme Court made clear that its holding provided a new and narrower conception of equitable restitution than had been discussed in older precedents. *Id.* at 214–15("Admittedly, our cases have not previously drawn this fine distinction between restitution at law and restitution in equity, but neither have they involved an issue to which the distinction was relevant."). Applying this newly refined understanding to the case before it, the Court concluded:

> The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents.

*Id.* at 214.

Few courts have considered the applicability of *Knudson* in the environmental cleanup context. Of those that have, several have observed, in dicta, that *Knudson* may have called into question the continuing viability of the Third Circuit's decision in *Hatco*. *See AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 452 (2d Cir. 2009) (observing in dicta that "[i]n light of [*Knudson*], it is by no means clear that the restitution provided by § 9607(a) is equitable [as held in *Hatco*], rather than legal, in nature," but declining to decide the Seventh Amendment question); *United States v. Sunoco, Inc.*, 501 F. Supp. 2d 641, 650 n. 12 (E.D. Pa. 2007) ("the United States's

assumption that restitution is equitable may also be called into question. The Third

Circuit in *Hatco* did seem to presume that all restitutionary remedies are equitable. But

the Supreme Court [in *Knudson*] has since clarified that restitution may be both legal and

equitable."); *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, No. 2:14-

595, 2014 WL 4627248, at *6 (E.D. Cal. Sept. 16, 2014) (observing that there was no

dispute in the case that "that CERCLA cost recovery actions are equitable in nature and

thus that no jury trial is available," but noting that, after *Knudson*, "some question has

arisen over the soundness of this assumption."). Only one court, however, appears to

have found that *Knudson* affirmatively rendered *Hatco* no longer good law. In *In re Oil*

*Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 98 F.

Supp. 3d 872, 881 (E.D. La. 2015), the Eastern District of Louisiana applied *Knudson* to

find that a claim for response costs under the Oil Pollution Act ("OPA"), sought legal,

not equitable relief. *Id.* ("Here, the State does not seek to recapture something that BP

wrongfully possesses. Rather, the action attempts to impose personal liability on the

defendant for the expenses the State has incurred in responding to the oil spill. The Court

finds that the State's claims for removal and response costs seek legal, not equitable,

relief."). That court, however, sitting in a district outside of the Third Circuit, was not

bound by *Hatco* in the first instance.

The clear majority of courts, however, have continued to apply *Hatco* after

*Knudson* to find that cost recovery actions for past restoration costs seek equitable relief,

for which no right to a jury trial exists under the Seventh Amendment. *See United States*

*v. Alsol Corp.*, 2017 U.S. Dist. LEXIS 6281, *5 ("the Court is not convinced that this

arguable uncertainty provided by a case not involving CERCLA is sufficient to deviate

from the Third Circuit's clear holding—and, consequently, to reconsider this Court's prior decision. Moreover, cases decided after *Great West* continue to echo the holding[] of *Hatco*."); *United States v. Viking Res., Inc.*, 607 F. Supp. 2d 808, 830 (S.D. Tex. 2009) ("In light of this "avalanche of authority," [including *Hatco*,] as the government characterizes it, the court concludes that the recovery of removal costs under OPA constitutes an equitable remedy, and therefore, that Viking and Chambers are not entitled to a jury trial on the basis of this remedy."); *Cf. id.* ("The court, however, acknowledges that the conventional wisdom as to the nature of the response cost remedy is open to question, particularly in light of the Supreme Court's opinion in *Great–West Life & Annuity Ins. v. Knudson*"); *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1046 (C.D. Cal. 2002) (observing *Knudson*, but applying *Hatco* for the principle that "[s]ubstantial case law supports the conclusion that CERCLA cost recovery actions are equitable in nature and thus that no jury trial is available"); *City of Banning v. Dureau*, No. 12-00043, 2013 WL 6063344, at *1 (C.D. Cal. Nov. 18, 2013) (citing *Hatco* and holding that "[t]here is no right to a jury trial in a private party CERCLA cost recovery action, for such relief is equitable in nature."); *May v. Apache Corp.*, 870 F. Supp. 2d 454, 460 (S.D. Tex. 2012) (same); *Neumann v. Carlson Envtl., Inc.*, 429 F. Supp. 2d 946, 959 (N.D. Ill. 2006) (same).

I find the reasoning of these courts persuasive. Firstly, as a district court sitting in the Third Circuit, *Hatco* is binding authority to the extent that it addresses the circumstances before me. Cost recovery actions under CERCLA are clearly analogous to Spill Act actions to recover primary restoration damages for costs already incurred. To find such restitution under the Spill Act to be legal rather than equitable in nature would

be inconsistent with *Hatco*. If the decision in *Hatco* is to be revisited in light of the potential general change in the boundaries of equitable restitution described in *Knudson* — and where *Knudson*'s application to the circumstances at hand is unclear, see discussion below — it is for the Circuit Court to decide, not this Court to predict. *Fenza's Auto, Inc. v. Montagnaro's, Inc.*, No. 10-3336, 2011 WL 1098993, at *7 (D.N.J. Mar. 21, 2011) ("When subsequent Supreme Court decisions implicate Third Circuit precedent, a district court may set aside Third Circuit precedent only if the Supreme Court has effectively overruled that precedent, or has rendered a decision that is necessarily inconsistent with Third Circuit authority." (citations omitted)).

Secondly, as several of the other district courts to consider the question have noted, *Knudson* was not a Seventh Amendment case, nor was it decided in the natural resources context. Instead, the Supreme Court resolved whether particular restitutionary relief was equitable within the meaning of a specific ERISA provision. Indeed, *Knudson*'s impact has been largely confined to the ERISA context, or closely analogous actions concerning breach of fiduciary duty. *See, e.g.*, *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Bollinger, Inc.*, 573 F. App'x 197, 202 (3d Cir. 2014) (applying *Knudson* in an ERISA matter to find that "regardless of how many different labels [plaintiff] applies to its claims, fundamentally it is seeking an order compelling appellees to pay it a sum of money that is not segregated from appellees' other assets. Such an attempt does not seek equitable relief."); *Pereira v. Farace*, 413 F.3d 330, 340-41 (2d Cir. 2005) (applying *Knudson* to an action for breach of fiduciary duty by a trustee, observing that "*Knudson* . . . reconfigured the legal landscape of restitution," and finding that, under *Knudson*, restitution is measured by defendant's unjust gain rather

24

than plaintiff's loss, such that actions in which recovery is measured in plaintiff's loss are now considered actions for legal relief in the form of compensatory damages). Reading *Knudson* to invalidate *Hatco*, when the latter decided a Seventh Amendment question in the natural resources context, as here, and the former did not, would thus be incongruous. Finally, I note that *Knudson* was decided sixteen years ago and, yet, no consensus has emerged of its import for equitable restitution in the natural resources context. Instead, all courts but one have either continued to apply *Hatco* or simply mused about *Knudson*'s potential impact, without applying it.

And so, where primary restoration damages for past costs are concerned, the Court here is faced with applying the clear holding of the Third Circuit's precedential decision in *Hatco* to the closely analogous Spill Act context, or being the first to declare that the Supreme Court's ruling in a 2002 ERISA case overruled *Hatco* by implication and changed widely accepted and well-settled law in the CERCLA/Spill Act natural resource context. This Court will not find that the Third Circuit's ruling has been vitiated on such a tenuous basis.

As noted above, however, the Third Circuit's decision in *Hatco* cannot be read to govern primary restoration damages under the Spill Act for future costs, not yet incurred. The parties have not identified, and the Court is not aware of any authority in the natural resource context decided under federal law, in which actions to recover future costs have been found to seek equitable relief. Indeed, Plaintiffs argue that their claims for future cost primary restoration damages do not seek *restitutionary* relief at all. Even assuming, however, that actions for an award of damages measured in future primary restoration costs are restitutionary in nature, given the dearth of other available precedents, the Court

finds that such actions would seek legal restitution as defined by the Supreme Court in *Knudson*, entitling Plaintiffs to a jury trial. While *Knudson*'s general applicability is sufficiently ambiguous to prevent this Court from overturning settled precedent, in the context of actions for the recovery of future costs, no such consideration is at play.

As the Third Circuit cited favorably in *Hatco*, § 115 of the Restatement of the Law of Restitution, covering the performance of another's duty to the public, is instructive in analyzing natural resource claims. Using its framework, Plaintiffs' claim for primary restoration damages may be viewed as an action to obtain a monetary award in recompense for assuming the Defendants' duties to restore public health and safety in the form of environmental cleanup costs, thereby conferring an unearned benefit upon Defendants. Restatement (First) of Restitution § 115 (1937). Here, as in *Knudson* then, the basis for the Plaintiffs' claims for future damages is not that Defendants hold particular funds that, in good conscience, belong to Plaintiffs, but rather that Plaintiffs are entitled to some funds for benefits that they conferred. *Knudson*, 534 U.S. at 214("The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents."). Unlike Plaintiffs' claims for primary restoration damages based on past costs, which constitute equitable restitution under *Hatco*, the Court therefore finds that Plaintiffs' claims for primary restoration damages based on future costs seek legal restitution, for which there is a right to trial by jury under the Seventh Amendment.

### 2. Primary Restoration as Injunctive Relief

Turning to the second *Chauffeurs* exception, Defendants contend that, (i) they are already remediating MTBE pollution at the Trial Sites; (ii) Plaintiff's expert report in support of its demand for primary restoration damages, includes in that figure the cost of restoring the Trial Sites *from their current condition*, thereby encompassing both the remaining remediation efforts and the primary restoration necessary beyond remediation; (iii) the Spill Act precludes duplicative recovery; and therefore (iv) Plaintiff's demand for primary restoration damages should be construed by the Court at least in part, as a request for injunctive relief, because it would require Defendants to discontinue remediation efforts already approved by the SRP and instead pay for the remediation and restoration efforts sought by the ONRR. *See* ECF No. 100-1, p. 31 ("a significant portion of Plaintiffs' 'Primary restoration' claim is essentially for injunctive relief — *i.e.*, an order requiring Defendant to perform Mr. Brown's remedial plan in lieu of the LSRP's plan. Otherwise, this portion of Plaitniffs' primary restoration claim would violate the Spill Act's prohibition on double recovery").  Even accepting Defendants' claim that Plaintiffs' existing demand for primary restoration damages in fact encompasses costs associated with remediation to risk-based standards in addition to costs associated with restoration back to pre-discharge conditions, Defendant has not identified any legal authority suggesting that an award of monetary relief by this Court would thereby be converted into an injunction. Moreover, the Court finds no risk of double recovery, in that Plaintiffs do not appear to dispute that the Spill Act affords NJDEP alternative methods to recover the same primary restoration damages; it does not empower NJDEP to compel Defendants to perform remediation work *and* seek damages for the cost of the

*same work*. If this is indeed NJDEP's position, it has not yet been raised to the Court, and would not appear to be permitted.

**B. Compensatory Restoration Damages**

Although the Court finds that Defendants effectively concede that Plaintiffs are entitled to a jury trial on their claims for compensatory restoration damages, offering in opposition only an offer to settle such claims without admission of liability, in the interest of completeness and clarity, I nevertheless find the law well-settled that such a right exists. "Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.'" *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 357 (3d Cir. 2015) (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.,* 532 U.S. 424, 432 (2001)). In the Spill Act context, "compensatory restoration" damages plainly fall within the category of compensatory damages, comprising a monetary award intended to redress the concrete "ecological services and values lost" by the State as a result of responsible parties' wrongful conduct in discharging pollutants into the environment. *Exxon Mobil*, 393 N.J. Super at 406. Such an interpretation of claims for compensatory restoration under the Spill Act as seeking compensatory damages is consistent with the unanimous interpretation of the Spill Act's federal analog. *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 994, 1000 (D. Mass. 1989) (action for compensatory restoration damages sounds basically in tort, presents fundamentally legal issues, and must be tried to a jury as a matter of right); *State of N.Y. v. Lashins Arcade Co.*, 881 F. Supp. 101, 103 (S.D.N.Y.), on reargument, 888 F. Supp. 27 (S.D.N.Y. 1995) (same); *Viking Res.,* 607 F. Supp. 2d at 832 ("at least one component

of natural resource damages—the diminution in value of those natural resources pending restoration—is legal in nature. It amounts to compensating the plaintiff for injury to its property, much like damages recovered in nuisance or trespass—both classic *legal* causes of action.").

### C. Plaintiff's Legal Claims Must Be Tried before Plaintiff's Equitable Claims

As a final issue, the law in this Circuit is firmly established that:

> When litigation involves both legal and equitable claims, even if it is the plaintiff that joins such claims, the right to a jury trial on the legal claim, including all issues common to both claims, must be preserved by trying the legal claim to a jury first, or at least simultaneously with the equitable claim, and by accepting the jury's findings on common facts for all purposes.

*AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 228 (3d Cir. 2009) (citing *Lytle v. Household Mfg. Inc.,* 494 U.S. 545 (1990); *Tull,* 481 U.S. at 412). The Court has identified numerous categories of legal relief sought in the Fourth Amended Complaint, in addition to two categories of equitable relief. The law is unambiguous that the claims for legal relief must be tried first.

Defendants make numerous arguments concerning the alleged inefficiency of trying Plaintiffs' legal claims before the equitable primary restoration claims that Defendants allege constitute 99.4% of the potential damages. Defendants also argue that Plaintiffs' legal claims are merely ancillary or incidental to the equitable claims. These arguments, however, fail to address the central issue of Plaintiffs' entitlement *under the Seventh Amendment* to have these issues tried first to the jury, regardless of whether the equitable claims are primary, more important, or would be more efficiently disposed of first. As the Supreme Court has explained,

> where both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury

trial of legal issues be lost through prior determination of equitable claims.' That holding, of course, applies whether the trial judge chooses to characterize the legal issues presented as 'incidental' to equitable issues or not.

*Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472–73 (1962). Such circumstances are clearly not present here, where the Court has determined that only Plaintiffs' claims for other injunctive and primary restoration damages based upon past costs incurred constitute equitable relief. Instead, contrary to Defendants' suggestion, given the numerous issues of fact which must inherently be shared in common across Plaintiffs' past and future primary restoration claims and compensatory restoration claims, it will certainly be more efficient, in addition to being required under the Seventh Amendment, to try Plaintiffs' legal claims first.

**IV. CONCLUSION**

Accordingly, the Court finds that Plaintiffs are entitled, under the Seventh Amendment, to a jury trial on their statutory and common law claims (i) for primary restoration damages for estimated future costs not yet incurred, (ii) for compensatory restoration damages, and (iii) for all other miscellaneous legal relief sought in connection with Plaintiffs' common law claims, including punitive damages. Plaintiffs are not entitled to a jury trial on their claims (i) for primary restoration damages to recover past costs already incurred, and (ii) for all other miscellaneous equitable relief, including injunctive relief. The Court will bifurcate the proceedings in this matter into (1) an initial jury trial of Plaintiffs' statutory and common law claims for primary restoration damages based on estimates of future costs, compensatory restoration damages, and other legal relief including punitive damages; and (2) a subsequent bench trial on Plaintiffs' Spill Act primary restoration damages claim for past costs incurred and other equitable relief, including any injunctive relief. An appropriate Order to follow.

Date:   May 22, 2018                              _____*/s/ Freda L. Wolfson*_____
                                                                FREDA L. WOLFSON, U.S.D.J.